# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMEERAH ADAM, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 21-374 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| ALDI, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I.   MEMORANDUM

Defendant's Motion (Doc. 3) to Dismiss Counts 3 and 4 of the Complaint will be granted.

## BACKGROUND

This case has been removed from state court, on the basis of diversity jurisdiction. Plaintiff asserts five Counts, two of which are at issue here – battery (Count 3) and false imprisonment (Count 4). *See generally* Compl. (filed at Doc. 1-1). Plaintiff's claims relate to an incident at Aldi's, between her, the store manager and another customer. Plaintiff, a woman of African descent and American citizen, "observes the hijab head coverings as commonly worn by Muslim women of African and Middle Eastern influenced backgrounds." *Id.* at ¶ 4.

Plaintiff visited the Aldi's store in question on May 31, 2020. *Id.* at ¶ 5. She approached the checkout area, carrying new items and an open bag of apples, previously purchased, that she intended to return. *Id.* at ¶ 6. The checkout clerk, who is Caucasian, retrieved the store manager, also Caucasian, to assist with the transaction. *Id.* at ¶ 7. "The manager was very condescending toward Plaintiff," and she "stated that it was against store policy to accept returns of products.

This statement was false[, as] Aldi's routinely accepts such returns nationwide." *Id.* at ¶ 8. "The manager then accused Plaintiff of selecting rotten apples from the bottom of [the] apple stand." *Id.* at ¶ 9.

"After processing the return, the manager . . . stayed to watch the rest of the transaction. Plaintiff felt that she was being racially profiled by the manager[,] as the manager was staring at her intently and being aggressive in [a] manner that Plaintiff perceived to be intimidating." *Id.*

As the checkout proceeded, the manager falsely accused Plaintiff of "moving . . . yogurts around," some of which were on sale, "in order to obtain more expensive yogurts for the cheaper sales price." *Id.* at ¶¶ 11-13. The manager instructed Plaintiff to follow her back into the store where the yogurts were kept. *See id.* at ¶ 12. As the incident became more contentious, "Plaintiff became frustrated with the racist way in which she was being treated." She requested that she either be provided the yogurt she paid for, given a refund, or she would contact corporate headquarters to complain. *Id.* at ¶ 15.

While Plaintiff and the manager were speaking, "another Caucasian, presumably a customer, . . . began to hurl racially charged insults at Plaintiff." *Id.* at ¶¶ 17-18. Plaintiff began to record the incident on her smart phone and, as the customer continued to berate and harass her, the manager "interjected that it was Plaintiff who was harassing the customer"; and the manager "pulled her phone out and, plaintiff assumes, contacted the police. Given how the situation was escalating, Plaintiff attempted to leave the store with the intent of contacting Defendant's corporate offices and reporting this racist behavior." *Id.* at ¶¶ 19, 22-23.

As Plaintiff left the store, three police officers arrived and Plaintiff requested their assistance. *See id.* at ¶¶ 24-25. "Immediately [there]after . . ., both the customer and the store's manager falsely accused Plaintiff of harassing the customer . . . . The police physically

restrained Plaintiff, took away her property and phone and began to yell at her.  Plaintiff believes

and therefore avers that the police so acted in order to prevent [her] from further filming this

racist incident[,] and their involvement in the same.  Plaintiff fell and injured her head as a result

of the policemen's treatment . . . and . . . mishandling of the situation.  She also injured her neck,

lower back and other parts of her body."  *Id.* at ¶¶ 26-28.

On these facts, Plaintiff alleges that Aldi committed battery and false imprisonment.

## ANALYSIS

### A.    Battery

Battery requires a harmful or offensive contact with a person; resulting from an act

intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such

a contact is imminent; in the absence of consent.  *See Montgomery v. Bazaz-Sehgal*, 742 A.2d

1125, 1130 (Pa. Super. 1999).

Aldi contends that Plaintiff's battery claim should be dismissed because she has failed to

plead facts that plausibly could lead to a determination that it committed a battery.

The Complaint specifically posits that the offensive touching was caused by police officers –

not Aldi's manager or other personnel.  It is well established that the offensive contact need not

be physically attributed to the alleged batterer's touch to be offensive – as in the case of an

attacker throwing a bucket of water upon a victim.  *See Herr v. Booten*, 580 A.2d 1115, 1117

(Pa. Super. 1990).  But the act must be *intentionally* designed to cause the offensive contact with

the other.  *Id.*

Here, Aldi's manager is alleged to have acted with the intention of contacting the police

and summoning them to the store.  Nowhere does the Complaint state or imply that the

manager's actions were intended to cause harm or offensive contact.  Rather, Plaintiff argues

that, but-for Aldi's calling the police and accusing her of harassment, Plaintiff would not have been injured.  The fact remains, however, that Defendant is not alleged to have acted with the requisite level of intent.

Plaintiff's vicarious liability argument fails as well.  The police do not stand in a master-servant, employee-employer relationship or other subservient relationship with Aldi.  Plaintiff's briefing admits as much.  *See* Doc. 6 at pg. 5 ("Plaintiff does not contend that Aldi's stands in a master-servant relationship with the police").  In this context, vicarious liability is narrowly construed, and it has been extended only to those who are directly responsible for the actions of subordinates.  *See, e.g., Davila v. United States*, 247 F. Supp. 3d 650, 659 (W.D. Pa. 2017) (under Pennsylvania law, a private employer may be liable for the acts of an employee taken within the scope of her employment).

Finally – and perhaps most at the crux of the matter – Plaintiff has failed to identify, and the Court is unaware of, a single legal decision endorsing a theory of causation so tenuous as the one presented here.  Taking all of Plaintiff's allegations as true, Aldi's manager called the police and accused her of harassment, period.  Short of adopting a causation standard akin to the "butterfly effect,"[1] the law cannot be read to make Aldi responsible.

### B.    <u>False Imprisonment</u>

False imprisonment requires:  (1) an intentional act to confine a person within boundaries fixed by the actor; (2) direct or indirect confinement of that person; and (3) that the person confined is conscious of the confinement or is harmed by it.  *Caswell v. BJ's Wholesale Co.*,

---

[1]  The "butterfly effect" refers to the popular notion that the flap of a butterfly's wing in Brazil can set off a cascade of atmospheric events that, weeks later, spurs the formation of a tornado in Texas.  *See generally* https://www.livescience.com/17455-butterfly-effect-weather-prediction.html.

5 F. Supp. 2d 312, 319 (E.D. Pa. 1998) (applying Pennsylvania law).  Confinement may be effected by physical barriers or physical force, by submission to a threat to apply physical force or by taking a person into custody under an asserted legal authority.  *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 541 (E.D. Pa. 1982) (applying Pennsylvania law).  The confinement within the boundaries fixed by the defendant must be complete; if there is a known, safe means of escape, involving only a slight inconvenience, there is no false imprisonment.  *Id.*  Unless physical force or physical barriers are used, there must be some sort of verbal threat to effect the confinement.  *Id.*  Finally, the plaintiff must make some request to leave that is denied by the defendant, *i.e.*, the plaintiff must attempt to determine whether her belief that her freedom of movement has been curtailed has basis.  *Id.*

Here, Plaintiff alleges that she was restrained by the police.  Compl. at ¶ 27.  Although the circumstances, degree and duration of the alleged restraint are not well defined, the Complaint makes clear that, to the extent it happened, it was at the hands of the police, not Aldi.  Moreover, Plaintiff alleges that the store manager demanded she *leave* the store – not remain.  *Id.* at ¶ 21.

Once again, Plaintiff offers a theory of causation so strained that, frankly, it is hard to utter with a straight face.  If telephoning the police makes a caller liable for any resulting restraint, at the hands of the police, the courts would be very busy, indeed.  The chilling effect such a rule might have on the reporting of civil disruption or purported criminal activity, moreover, would be deeply troubling.  Thankfully, the law does not countenance Plaintiff's theory, and her false imprisonment claim fails.

Consistent with the foregoing, the Court hereby enters the following:

## II.  <u>ORDER</u>

Defendant's Motion (Doc. 3) to Dismiss Counts 3 and 4 of the Complaint is **GRANTED**, and those Counts are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.


August 25, 2021                                    s/Cathy Bissoon
                                                   Cathy Bissoon
                                                   United States District Judge

cc (via ECF email notification):

All Counsel of Record

6